UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| Kevin Rocheville | : | |
| | : | |
| v. | : | |
| | : | |
| Thomas Goulden, | : | |
| Matthew Keenliside, | : | Civil Action No. 19-CV-01169-AJ |
| Allison Caprigno, and | : | |
| Town of Pelham, NH | : | |

## AFFIDAVIT OF ALLISON CAPRIGNO

NOW COMES Allison Caprigno being duly sworn on oath, depose and state as follows:

1. I am over the age of 18 and am of sound mind.

2. I joined the Pelham Police Department in 2005 as a dispatcher.

3. In 2007 I became a part time patrol officer and the Animal Control Officer for the Department, positions I have held ever since.

4. I attended the part time Police Academy and am familiar with the department's policies on arrests, including the requirement that arrests be made only upon a determination of probable cause.

5. In September 2016 I received a report of a dog – a rottweiler/pitbull mix - at large.

6. The reporting party indicated that the dog at issue came from 31 Jonathon Road.

7. I responded to the address and met Plaintiff Kevin Rocheville and Michelle Stone. Plaintiff and Stone each denied having a dog matching the description of the dog at large.

8. I observed two other dogs at that property, one of whom had recently whelped and another in a chain link enclosure by the driveway. The latter appeared frail, and neither were registered with the Town.

1

9. Plaintiff told me that he was just fostering the dogs, along with six others at the house (plus the puppies). I explained that even foster dogs were supposed to be registered.

10. On October 5, 2016, I heard from a Jody Harris from Looking Glass Animal Rescue in Connecticut. Harris expressed concerns about dogs she had placed in Plaintiff's care.

11. The following day, I assisted fellow officer Ryan Donovan in responding to a complaint by Plaintiff against Stone, whom he had apparently asked to leave the home.

12. I met Stone the next morning (October 7, 2016) at the station. She informed me that Plaintiff had numerous dogs at the home, identifying 35 by name and showing me photos on her phone of 20 to 30 dogs in crates which she represented to be in the house, including in the living room, basement, and garage. At least some of the dogs appeared underweight and seemed to lack food or water.

13. Later that day I went to Plaintiff's home to assist a Looking Glass volunteer take possession of dogs that belonged to the rescue. I observed four Pitbulls in crates in the basement and other dogs in the garage. Several of the crates had urine pools and fecal matter in them.

14. Over the next few days I fielded calls from nearby animal control officers reporting that Plaintiff had left dogs with various persons in their respective towns. It appeared to me that Plaintiff was shuttling various dogs to other locations. Several of the dogs were reported to be in poor condition.

15. On October 10, 2016, Stone returned to the station and reported that she had been monitoring Plaintiff's movements on a "track my iPhone" app and believed he was moving dogs to Sudbury and Lincoln, Massachusetts.

16. I did not instruct Stone to install that app or to track Plaintiff's movements.

2

17. Based on my observations and information from Stone, Harris, and my fellow animal control officers, on October 17, 2016, I applied for a search warrant for Plaintiff's home, supported by a six-page affidavit. A true and accurate copy of the affidavit in support of the application is attached hereto as <u>Exhibit</u> <u>1</u>.

18. The application was presented to and approved by Circuit Court Judge Robert Stephen.

19. The search warrant was executed the following day. I was present, along with numerous Pelham officers and ACO's from three other towns.

20. I am familiar with Thomas Goulden, who worked at the Pelham Police Department though 2014. Goulden was not present at the execution of the warrant and had nothing to do with the decisions to investigate or arrest Plaintiff. I never entered into any agreement with Goulden to investigate, arrest or harass Plaintiff. In fact, I have not spoken or communicated with Goulden since he left the Pelham Police Department.

21. Upon entering the home there was a very strong smell of ammonia. There were two dogs in crates in the kitchen with a small amount of water and no food. There was another dog inside the first-floor bathroom laying on a dirty blanket. The walls had dirty claw marks on them, and it appeared a dog had chewed a hole in the door. The living room had piles of feces on the floor and the carpets were stained with urine. Upstairs there were more urine stains and there was fecal matter in the doorway of the front office. Eight puppies were in one bedroom on a soiled towel. There were three empty cooking pans on the floor with no water in them. There were dogs in the basement with soiled newspaper in their crates.

22. Numerous photos of the home and dogs there were taken. True and accurate copies of some such photos are attached hereto as <u>Exhibit</u> <u>2</u>.

23. We removed 10 adult dogs and the eight puppies from the home during or at the conclusion of the search. Several of the dogs were underweight, others had hookworm and Giardia, and yet others urine and fecal scalding on their feet.

24. Based on my observations, I charged Plaintiff with ten counts of neglect, a misdemeanor under RSA 644:8.

25. I sought an arrest warrant for Plaintiff, supported by an affidavit which I submitted to a Justice of the Peace for review. A true and accurate copy of the warrant associated with application is attached hereto as Exhibit 3.

26. The arrest warrant issued on October 26, 2016 pursuant to which Plaintiff was arrested. A true and accurate copy of the warrant is attached hereto as Exhibit 4.

27. Plaintiff's prosecution was originally handled by police prosecutor Michael McCall.

28. During the course of the prosecution arrangements were reached regarding the disposition of the various dogs, some of which were returned to shelters or rescues and some directly back to Plaintiff. Plaintiff took responsibility for certain veterinary and/or boarding bills which he paid at the police station.

29. On one such occasion, Officer Matthew Keenliside was present. He did not "chest bump" or otherwise have physical contact with Plaintiff.

30. I never called Plaintiff an "evil little man" or suggested that he needed counseling or was "not right in the head."

31. I never suggested to him that any of the dogs seized from the property had been euthanized.

5

FURTHER THE AFFIANT SAYETH NOT.


Dated:  July 21, 2021                           /s/ Allison Caprigno
                                                       Allison Caprigno


STATE OF NEW HAMPSHIRE
COUNTY OF HILLSBOROUGH


    Subscribed and sworn to before me this 21 day of July, 2021.

                                                     /s/ Linda Y. Newcomb
                                                     ~~Notary Public~~/Justice of the Peace
                                                       Commission expires:  December 19, 2023