UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF NEW HAMPSHIRE

Kevin Rocheville,                                      )
                                                       )
v.                                                     )
                                                       )
Thomas Goulden, Matthew Keenliside,                    )          Civil Action No. 19-CV-01169-PB
Brian McCarthy, Joseph O'Roark,                        )
Michael McCall, Allison Caprigno,                      )
Jody Harris-Stern, John Does,                          )
Jane Does and Town of Pelham, NH                       )
                                                       )

## PLAINTIFF'S MEMORANDUM OF LAW AND AFFIDAVIT IN SUPPORT OF HIS OBJECTION TO DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT

NOW COMES, the Plaintiff, Kevin Rocheville, and objects to Defendant's motion for Summary Judgement, and says as follows:

## I. INTRODUCTION

The Search Warrant and Arrest Warrant do not establish probable cause when examining the four corners of the Affidavits and the ten complaints. One of the Pelham Police Officer's questioned probable cause in an email. **(Exhibit #2)** The Salem District Court Judge, Judge Stevens, told the Pelham Prosecutor, Attorney Michael McCall, "Not to bring this matter before him again." The Arrest Warrant was not signed by disinterested magistrate but by the Records Clerk of the Pelham Police Department. There is no Qualified Immunity that protects the Defendants since the Arrest Warrant and Complains were not issued to vindicate the State for a crime but due to the ill will and malice of the Defendants. The Defendants acted in bad faith.

1

The Civil Conspiracy is supported by circumstantial evidence.   The Plaintiff advised Officer Goulden's wife of an affair between him and Cheryl Bordeleau  Both Officer Goulden and Officer Keenliside threatened the Plaintiff following his disclosure of Goulden's affair to Goulden's his wife.  An unknown officer, Officer Doe, also threatened the Plaintiff.

There were a number of motor vehicle stops of the Plaintiff, conducted by various members of the Pelham Police Department, of which none resulted in the issue of a summons.  The Plaintiff's vehicle was blocked by police cruisers while he was parked at the police station, resulting in  him having to wait approximately forty-five minutes before he could leave.

Officer Caprigno used the pretext of a stray dog chasing residents up the street, to attempt to gain entry to the Plaintiff's residence to look around.  The only dog the Plaintiff had that even remotely resembled the description given by Officer Caprigno, could not have been outside nor could she have chased anyone up the street as she was heavily pregnant at the time.

The Pelham Police Department executed a Search Warrant during which they used excessive force to gain entry to the Plaintiff's residence, had an excessive amount of police officers present for a search warrant based on an alleged criminal violation of the Animal Cruelty statue and carried military grade rifles.  This was designed to intimidate the Plaintiff.  The ten Complaints had no legal or evidentiary support.  All of this conduct was due to the fact that Goulden advised the other officers that the Plaintiff  had informed Goulden's wife of the affair.   This was obvious based on the statements made to the Plaintiff by other officers and the resulting harassment.  While it is normal for Goulden's friends and co-workers to react angrily, it is not appropriate for police officers to use their status, badge and police powers to retaliate against the one who divulged information that may have personally hurt their brother or sister in blue.  In law enforcement this

2

is known as "the thin blue line" and the "blue wall" all of which have taken countless victims and caused them suffering rather than protecting them as an officer has been sworn to do.

## II. STANDARD OF REVIEW

As a supplement to the Defendant's standard of review, the Plaintiff asserts that   in reviewing a Motion for Summary Judgement, the Court is required to accept the facts of the non-moving party as true <u>with all inferences drawn therefrom</u>.  If there are disputed material facts, the motion must be denied.  <u>General Office Products v. A.M. Capen's Sons</u>, 780 F.2d 1077 (1st Cir. 1986)

On Summary Judgement Standard, in ruling on a Motion for Summary Judgement, the Court must review the evidence in the light most favorable to a party opposing summary judgement and indulge all inferences favorable to that party.  <u>General Office Product Corp. v. A.M. Capri Sun's Inc.</u>, 780 Fed. 2nd 1077, 1078 (first Cir. 1986)

## III. STATEMENT OF MATERIAL FACTS

Goulden was a Lieutenant in the Pelham Police Department and was employed by the Pelham Police Department off and on since 2010.  **(See Affidavit of Kevin Rocheville)**

Goulden was employed by the Town of Brookline, New Hampshire as the Chief but was fired on or about April 30, 2010. After Goulden was fired by the Town of Brookline he was hired by the Town of Pelham, New Hampshire as a police officer. Shortly after his hire by the Pelham Police Department, Goulden left to become the Chief of Police for the Town of Shirley, Massachusetts. While serving as Chief for approximately two (2) years, Goulden was fired and was rehired by the Town of Pelham, New Hampshire as a police officer.  **(See Affidavit of Kevin Rocheville)**

On or before May 20, 2014, Goulden began to have a sexual affair with Rocheville's girlfriend, Cheryl Bourdeleau, who was the mother of Rocheville's two sons. Goulden previously had a sexual relationship with Bourdeleau when she was eighteen-years-old.   **(See Affidavit of Kevin Rocheville)**

On or about May 22, 2014, Rocheville informed Goulden's wife of the sexual affair that Goulden was carrying on with Cheryl Bourdeleau.  On or about September, 2014, Goulden advised Rocheville that if "he didn't watch it he would put a round in his head".  **(See Affidavit of Kevin Rocheville)**

Shortly after Rocheville informed Goulden's wife of the sexual relationship with Cheryl, Goulden, Keenliside, John Does, Jane Does and Caprigno engaged in a concerted, deliberate, willful, intentional campaign to punish Rocheville and to humiliate him, hold him up to ridicule and to emotionally harm him so as to make his life in the Town of Pelham, New Hampshire a "living hell" and to drive him out of town.  **(See Affidavit of Kevin Rocheville)**

John Doe, a Lieutenant, advised Rocheville, on or about October 18, 2016, when he was acting as a civil standby at Rocheville's house that "you should have kept your mouth shut and not told his wife" and when you "fuck with one of us, you fuck with us all."  **(See Affidavit of Kevin Rocheville)**

Between the dates October 4, 2016 and on or about May 1, 2017 Rocheville was stopped by various Pelham Police Officers while driving in Pelham, New Hampshire. Shortly thereafter, a number of Pelham Police cruisers would appear as backup with their flashing blue lights. Rocheville does not know that names of the back-up Pelham Police officers. As a result of the multiple police stops, Rocheville was never charged with a moving violation or crime. The

automobile stops were done to harass and intimidate Rocheville and not for any legitimate or lawful purpose.  **(See Affidavit of Kevin Rocheville)**

In December 2016, Rocheville went to the Pelham Police Department to pay some veterinarian bills in order to retrieve some of his dogs that were confiscated. While in the lobby Rocheville was assaulted by Lieutenant Keenliside when he bumped into Rocheville's chest and then stated, "What the fuck are you looking at", "What is your fucking problem?" Lieutenant Keenliside and Caprigno began to laugh at him. **(See Affidavit of Kevin Rocheville)**   This encounter is supported by Officer Keenliside's emails to Prosecuting Attorney Michael McCall. Officer Keenliside claimed the Plaintiff "stared at him awkwardly the whole time".  **(Exhibit #2)**

When Rocheville left the Police Department, he discovered that there were a number of Pelham police cruisers blocking his vehicle and his ability to back out of the parking space.  After forty-five minutes, the police cruisers left.  **(See Affidavit of Kevin Rocheville)**

Rocheville met with Interim Chief McCarthy to advise him of the intimidation campaign that was being waged against him by the Pelham police officers. McCarthy told Rocheville that he would look into it. Upon information and belief, McCarthy took no steps to stop the intimidation and harassment campaign waged by the Pelham Police Department Officers and the intimidation and harassment continued while he was still employed by Pelham. When Defendant, O'Roark, was Chief, Rocheville advised him of the harassment yet the campaign of intimidation and harassment continued.  **(See Affidavit of Kevin Rocheville)**

Rocheville also brought to the attention of the Town of Pelham Board of Selectmen, the concerted campaign of harassment and intimidation that was being waged by the Pelham Police Officers and they failed to act or implement any steps to curtail that activity. **(See Affidavit of Kevin Rocheville)**   Based on their review of the police dispatch logs, the Town of Pelham

Selectmen acknowledged one motor vehicle stop of the Plaintiff **(Exhibit # 15)** but in actuality, the Plaintiff was stopped many times, one of which occurred on April 7, 2017, and which was recorded. **(Exhibit # 15)**

Caprigno, who was the animal control officer, obtained a search warrant to search the Plaintiff's residence for abused animals. **(Exhibit # 3)**

On October 18, 2016, the search warrant that lacked probable cause was executed. In addition to Officer Caprigno, there were six police officers and two street crime unit police officers present when the Search Warrant was executed. **(Exhibit # 4)** The officers used unnecessary excessive force to gain entry to the Plaintiff's residence, even though the door was unlocked and caused extensive damage to his door and entryway. **(Exhibit # 5)** Some of the officers carried M4 rifles. **(See Affidavit of Richard Tarpey)**

Rocheville had no criminal record, no motor vehicle record and never engaged in any prior conduct that would warrant the use of eight police officers to execute an Animal Cruelty Warrant. **(See Affidavit of Kevin Rocheville)**

The unnecessary and excessive use of force to gain entry, was part of the Department's systemic campaign to harass, frighten and drive Rocheville out of the Town of Pelham. In fact, the Prosecuting Attorney Michael McCall told the Plaintiff's attorney, Attorney Rusty Chadwick, who was representing the Plaintiff for the Animal Cruelty charges, that the Pelham Police Department would dismiss the charges against the Plaintiff, if he would move out of town. **(See Affidavit of Kevin Rocheville)**

Despite Michele Stone's involvement with the care of the dogs, she was not charged with any offenses. She was deemed to be a cooperating witness, whom Officer Caprigno used to track the Plaintiff's movements via an app on her and the Plaintiff's iPhones. When the Plaintiff

discovered the app on his iPhone was being used to track him, he disabled this feature.  After he did so, Officer Caprigno stopped calling Ms. Stone.  **(See Affidavit of Michele Stone & Exhibit #8 ¶4)**

In addition to the activity that was a part of the concerted campaign of intimidation and harassment, Rocheville was libeled and slandered by various people and was called a "vicious little man" by Officer Caprigno.  **(See Affidavit of Kevin Rocheville & Exhibit #22)**   Officer Caprigno advised the Plaintiff that his bill from the Angel Memorial Hospital was fraudulent. Somehow this bill and the claim that it was fraudulent was posted on the internet via social media. **(Exhibit #13)**  This information could only have come from Officer Caprigno who confiscated the bill during the Search Warrant.  **(Exhibit # 14 - Angel Memorial Hospital discharge summary validating the diagnosis)**

On or about October 26, 2016 Caprigno caused to be issued ten Class A Misdemeanor Complaints Alleging Animal Cruelty against Rocheville.   **(Exhibit #6)**   Not only were the Complaints procedurally defective but the Defendants had no proof that the Plaintiff caused the physical conditions contained therein.  They did not consider what condition the rescue dogs were in prior to the Plaintiff taking them in.  They merely decided that the Plaintiff's neglect was the reason for all of the ailments and the "root of all evil".

This misuse of the criminal justice system was part of the concerted campaign that was being waged against Rocheville by the Pelham Police Department.  **(See Affidavit of Kevin Rocheville)**

As a result of the criminal charges and the widespread publication of these charges on the television news and in area newspapers, Rocheville's parental rights to his two (2) sons has been curtailed and his relationship with his two sons has been greatly impacted. Cheryl Bordeleau is the

Mother of the Plaintiff's two sons.  A number of internet postings held him up to ridicule and the publication of the false information destroyed his business and business reputation. This conduct exacerbated his emotional distress.  Postings were labeling the Plaintiff as a "monster" when he was only trying to save dogs that were going to be euthanized.   **(See Affidavit of Kevin Rocheville)**

Rocheville for the past twenty years has been actively involved with rescuing dogs. Rocheville has taken various training courses in handling dogs. Rocheville was a volunteer in assisting the Town of Pelham concerning dog issues. Rocheville has volunteered his services to various dog adoption facilities and has always been concerned with the welfare of dogs and his belief that dogs should not be euthanized if they do not have a home. Rocheville held various certifications. Rocheville expended several hours at the Pelham Fish and Game facility kennel operated by the Town of Pelham and staffed by ARNE Members. Rocheville did fabricate kennels, replace fencing, borrowed a thousand gallons of water when the facilities well failed and did bring in additional gallons of water for the dogs. Rocheville would also run errands for the facility by bringing the dogs to veterinary appointments, dropping dogs off, etc. Rocheville also spent five thousand dollars ($5,000.00) at Angel Memorial Hospital for a rescue dog, Onyx, who was treated for the parvovirus. This was one of the dogs that was confiscated by the Pelham Police Department. **(See Affidavit of Kevin Rocheville, Affidavit of Karen DeVore & Exhibit #12)**

Rocheville has expended approximately $10,000 in veterinarian bills for dogs that he has rescued in the past and those that were confiscated. He has found adoptive homes for dogs that he has rescued. He has spent thousands of dollars feeding dogs that he has rescued and other significant expenses. Rocheville was forced to expend thousands of dollars for an attorney to represent him and fight the criminal charges.  **(See Affidavit of Kevin Rocheville)**

As a result of the publication of Rocheville's arrest for animal cruelty, his name appeared in the newspaper that was circulated in the Pelham area as well as statewide, on television news casts and on the internet. As a result of the false charges, Rocheville was subjected to a barrage of verbal abuse, attacks, insults, and intimidation by the general public. At a hearing before Judge Stevens at the Salem District Court, the Prosecutor was told, "don't bring this in front of me again. Don't waste the Court's time." **(See Affidavit of Kevin Rocheville)** After the charges were dismissed, Officer Caprigno was interviewed by a reporter from Boston 25 News. The conversation was reported in a news story that was shown via television and is available online as well. The reporter asked Officer Caprigno "if it was usual that dogs would be returned to an accused abuser". Officer Caprigno replied, "Uh, not normally. I think it's safe to assume that he was thinking he was doing a good thing, and when it came down to it, he got overwhelmed." **(Exhibit #24)**

On May 1, 2017 all of the pending criminal complaints were Nol Prosed by a new prosecutor. **(See Affidavit of Kevin Rocheville)** During the time that some of the dogs confiscated from Rocheville's home were in the care of Caprigno and the Town of Pelham they were injured and mistreated. **(See Affidavit of Karen DeVore)**

Caprigno on or after October 18, 2016 disseminated a derogatory statement that was heard by third parties as follows: "He is an evil little man." Rocheville "needed counseling, and was not right in the head." Caprigno repeatedly threatened Rocheville that he "would be going to jail for at least two (2) years" and "pack your toothbrush." That she would "destroy" him. He would "never own another dog." When she went to Rocheville's house for an inspection, she told him with a grin that Oreo or Bravo had been "euthanized", or that Cooper was "euthanized." These and other

statements were made purposely to harass and cause emotional distress.  **(See Affidavit of Kevin Rocheville)**

## IV - <u>VIOLATION OF CONSTITUTIONAL RIGHTS</u>

### A.    <u>Section 1983</u>

In order to succeed on a Section 1983 claim, a plaintiff must prove that his constitutional rights were violated, and that the violation was caused by a person acting under color of law. *West v. Atkins*, 487 U.S. 4242 (1988).

The actions of the Defendants arise under the United States Constitution particularly under the provisions of the Fourteenth Amendment to the Constitution of the United States (Art. IV, U.S. Constitution Article XIV, U.S. Constitution and under federal law particularly the Civil Rights Act, Title 42 of the United States Code, Section 1983, (42 U.S.C.A. §1983).

It is not disputed by the Defendants that the acts alleged by the Plaintiff were done under the color of law.

Section 1983 "is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred." <u>Albright v. Oliver</u>, 510 U.S. 266, 271, 114 S. Ct. 807, 127 L. Ed. 2d 114 (1994) (quoting <u>Baker v. McCollan</u>, 443 U.S. 137, 144 n.3, 99 S. Ct. 2689, 61 L. Ed. 2d 433 (1979)). To maintain a claim under section 1983, a plaintiff must establish: "1) that the conduct complained of has been committed under color of state law, and 2) that this conduct worked a denial of rights secured by the Constitution or laws of the United States." <u>Barreto-Rivera v. Medina-Vargas</u>, 168 F.3d 42, 45 (1st Cir. 1999).  <u>Shuper v. Austin</u>, U.S. Dist. ME (2015).

The Plaintiff was seized in the Fourth Amendment context when he was taken into custody pursuant to a faulty arrest warrant issued by the records clerk of the Pelham Police Department.

"The issuance of an arrest warrant is a judicial act and the justice has the discretion in deciding whether to issue a warrant" State v Fields, 119 N.H. 249 400 Atlantic 2nd.175 (1978)

The conduct of the Defendants, Goulden, Caprigno, Keenliside, John Does and Jane Does, deprived the Plaintiff of the following privileges and immunities secured to him by the Constitution of the United States:

        a.      The right of free movement and other privileges and immunities.

        b.      The right to privacy.

        c.      The right to have relationship with his sons.

        d.      A violation of his Fourth Amendment Rights.

The issue, therefore, is whether on the summary judgment record, Plaintiff could demonstrate that the Defendants committed a constitutional deprivation.  The Fourth Amendment prohibits unreasonable searches and seizures, and provides that no warrant shall issue except on a showing of "probable cause, supported by oath or affirmation." U.S. Const. amend. IV.

The Plaintiff was subject to arrest and charged with ten (10) separate Class A Misdemeanors that were improperly issued without probable cause and subsequently disposed of without any finding of guilt.

The arrest warrant lacked probable cause sufficient to issue a warrant, which must be reviewed by a neutral and detached magistrate.  Whether an officer has probable cause to arrest is assessed in light of the totality of the circumstances, and is evaluated in light of "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Illinois v. Gates, 462 U.S. 213, 230 - 31, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983) (quoting Brinegar v. United States, 338 U.S. 160, 175-76, 69 S. Ct. 1302, 93 L. Ed. 1879 (1949)).

Probable cause for an arrest exists if, "at the time of the arrest, the facts and circumstances known to the arresting officers were sufficient to warrant a prudent person in believing that [the individual] had committed or was committing a crime." United States v. Torres-Maldonado, 14 F.3d 95, 105 (1st Cir. 1994).

Each of the ten complaints alleged that the Plaintiff "permitted or caused any animal in his custody to wit: Dog # 1 - Ally (Rottweiler Mix - Female) and her eight puppies to be subjected to cruelty, inhumane treatment or unnecessary suffering of any kind BY ALLOWING HER TO BE UNDER WEIGHT, HAVE SKIN INFLAMMATION/SORES AND TO BE GIARDIA POSITIVE." ( Capitalized for emphasis)  The premise of all the other nine complaints was based on a violation of RSA 644:8, III, and alleges that the Plaintiff caused certain medical conditions. **(Exhibit # 6)**

An examination of the four corners of the Search Warrant and the Arrest Warrant do not assert that the Plaintiff's conduct caused any of the animals to contract the physical conditions asserted in the Complaints. **(Exhibit #s 3, 6 & 8)**  Nor is there evidence that could be asserted that the Plaintiff caused these medical conditions.  The Plaintiff did not have the rescue dogs for more than approximately two months prior to the start of the investigation.  (see Rocheville Affidavit)  The Defendants do not have medical evidence to support their assertion that the Plaintiff caused these physical ailments alleged in the Complaints as the basis for the charge of Cruelty to Animals.  According to Officer Caprigno, Van was in good condition, Bruno was in good condition and Brock was in good condition.  **(Exhibit #9)**  The Veterinarian Report for Ally and her eight puppies documented their good health.  **(Exhibit #s 10 & 11)**  The Plaintiff was charged with Animal Cruelty for these rescue dogs. **(Exhibit # 6)**

12

The Complaints state that the Plaintiff's treatment of the rescue dogs resulted in their contracting various physical ailments. (Exhibit #6)  Nowhere in the four corners of the Arrest Affidavit does Officer Caprigno state that the Plaintiff caused the ailments yet, this is what was alleged in the complaints.

Additionally, when Officer Caprigno spoke to Michele Stone on October 6, 2017, she claimed that the dogs would no longer be properly cared for now that she is no longer residing there **(Exhibit 8 ¶4)**.  Michele Stone's statement provided the Defendants with evidence that she was also caring for the rescue dogs.  It further indicates, that prior to October 6, 2016, the rescue dogs were properly cared for by Michele.  Michele left the Rocheville residence on October 6, 2016. **(Exhibit 8)**

The Defendants assertion in the Affidavit is wholly lacking the necessary elements to rise to the level of a crime as alleged in the complaints.  **(Exhibit #s 6 & 8)**  The Defendants' evidence, at the time both warrants were issued, was deficient as the Affidavit contained no evidence from a veterinarian which supported that the medical conditions of the rescue dogs were directly caused by the Plaintiff.  In fact eight days prior to the issuance of the Arrest Warrant, a veterinarian at the Rockingham Emergency Veterinary Hospital found Allie to be "overall healthy" **(Exhibit 10)**.  On October 18, 2016, the veterinarian also found that Ally's eight puppies were "healthy overall". **(Exhibit 11)**  Ally was one of the rescue dogs contained in the Criminal Complaint. **(Exhibit 6)**. This fact was not disclosed in the Affidavit for the Arrest Warrant.  In an email from Officer Chase to Officer Keenliside, he questioned the quantity and quality of the evidence to support the Search Warrant.  **(Exhibit # 2)**  Officer Caprigno at the conclusion of the criminal matter stated, Kevin Rocheville was trying to the right thing but was overwhelmed. **(Exhibit # 24)**

Additionally, the Defendants based their probable cause on the conditions of the rescue dogs found at the Plaintiff's home. At no point in time, did any of the defendants, namely Alison Caprigno, who was the affiant of the search and arrest warrant, investigate or make inquiry as to the condition of the rescue dogs prior to the Plaintiff receiving them and they certainly did not consider the large amount of ointments and medicine that the Plaintiff paid for to treat the rescue dogs' various conditions that already existed when he received them. They instead turned a blind eye to inquiry and simply assumed that the rescue dogs were in poor physical condition and possessed certain ailments and received them at the hands of the Plaintiff. Specifically, caused by the negligence of the Plaintiff – which is mens rea for the elements of the offense for which the Plaintiff was subjected to a search of his home and ultimately a deprivation of his freedom by virtue of arrest.

The State of New Hampshire Law Enforcement Manual (November 2020) states in Chapter XVI. The Law of Arrest, Section E, Number 1, that: "An arrest warrant can be issued by any justice of the peace, or any justice of the supreme, superior, or circuit courts of New Hampshire, provide that the justice is neutral and detached". 1  Section E, Number 2 states: "When submitting an application for an arrest warrant to a justice of the peace, it is the officer's responsibility to confirm that the justice of the peace understands what constitutes probable cause. Failure to do so could render the warrant invalid if it is later challenged in court".

The Arrest Warrant was defective as it was not signed by a disinterested magistrate but signed by the records clerk of the Pelham Police Department, Brenda Rizzo. **(Exhibit #8)** This speculation alone brings light to a series of material facts in dispute as discussed in Coolidge v. New Hampshire, which are parallel to the fact in this case. In the Coolidge case, the Court's holding states that the warrant that authorized the search and seizure was found to be invalid

14

because it had not been issues by a Neutral and Detached Magistrate but by the attorney general who was actively in charge of the investigation.  See Coolidge v. New Hampshire, 403 U.S. 443, 453 (1971)  Coolidge parallels this case as Ms. Rizzo was a member of the police department and thus privy to crucial information and facts relative to the Pelham Police investigation of the Plaintiff and she could have been biased by comments she had heard "around the station" from other officers as well as any interaction she may have had with the Plaintiff.  Again, this warrants more scrutiny to examine the basis for the Plaintiff's claims that he was harassed, intimidated and ultimately arrested by the officers of the Pelham Police Department who used their authority, under color of law to abuse the process and degradate the core of the criminal justice system.  A disinterested magistrate is a prerequisite in New Hampshire, to the issuance of an arrest warrant.  This is unlike the situation in State v. Morris, 98 N.H. 517, 518, 103 A.2d 913, 913 (1954), where the New Hampshire Supreme Court upheld a warrant signed by the Chief of Police, who was the superior to the arresting police officer.  The rationale the New Hampshire Supreme Court used to justify upholding the arrest warrant was due to the fact that the person signing the arrest warrant was the Chief of  Police who possessed the ability to impose consequences in the event the arresting police officer's conduct was questionable.  In this case, the Records Clerk Rizzo is not the superior of Officer Caprigno.  Clerk Rizzo was not a disinterested magistrate, thereby, invalidating the Arrest Warrant.

Here, the bias and harassment is evident in that the Arrest Warrant was signed by Brenda Rizzo, who is a Justice of the Peace but more importantly is the Records Clerk of the Pelham Police Department.  Brenda Rizzo was responsible for reviewing and examining the Affidavit for the Arrest Warrant prepared by Caprigno, to determine if based on the information provided by the officer, whether there is probable cause to believe that a crime was committed and that the

person named in the warrant committed the crime. (The State of New Hampshire Law Enforcement Manual (November 2020)  Judges obviously have extensive training in the field of law as well as extensive knowledge in determining the degrees and stages of the burden of proof required, whether it be reasonable suspicion, probable cause, preponderance of the evidence or proof beyond a reasonable doubt.  How can one have confidence that a records clerk has any idea or notion as to what constitutes Probable Cause.  This speculation alone brings light to a series of material facts in dispute as discussed in Coolidge v. New Hampshire, which are parallel to the fact in this case. In the Coolidge case, the Court's holding states that the warrant that authorized the search and seizure was found to be invalid because it had not been issues by a Neutral and Detached Magistrate but by the attorney general who was actively in charge of the investigation. Coolidge v. New Hampshire, 403 U.S. 443, 453 (1971)[1]  Coolidge parallels this case as Ms. Rizzo was a member of the police department and thus privy to crucial information and facts relative to the Pelham Police investigation of the Plaintiff and she could have been biased by comments she had heard "around the station" from other officers as well as any interaction she may have had with the Plaintiff.  Again, this warrants more scrutiny to examine the basis for the Plaintiff's claims that he was harassed, intimidated and ultimately arrested by the officers of the Pelham Police Department who used their authority, under color of law to abuse the process and degrade the core of the criminal justice system.   A disinterested judicial officer is a requirement for the issuance of an arrest warrant since she will interpose herself between the police and the citizenry.  Spinelli v US, 393 US 410, 419 (1968).

---

[1] RSA 592-A:5 (2001); RSA 592-A:8 (Supp. 2019).  See Coolidge v. New Hampshire, 403 U.S. 443, 453 (1971) (a search warrant was invalid where it was signed by the attorney general, whose office was overseeing the underlying investigation)

---

Additionally, in <u>State v. Morris</u>, 98 N.H. 517, 518, 103 A.2d 913, 913 (1954), the New Hampshire Supreme Court upheld a warrant signed by the Chief of Police, who was the superior to the arresting police officer.  The rationale the New Hampshire Supreme Court used to justify upholding the arrest warrant was due to the fact that the person signing the arrest warrant was the Chief of  Police who possessed the ability to impose consequences in the event the arresting police officer's conduct was questionable.

Michele Stone was never charged with Animal Cruelty as co-defendant.  According to Officer Caprigno's police report, she was aware that Michele had the ability to track the Plaintiff through an app on their iPhones, called Trak My iPhone. **(See Affidavit of Michele Stone & Exhibit 8 ¶7)**.  Instead of charging Michele, Officer Caprigno used her to track the whereabouts of the Plaintiff via the iPhone tracking app.  On October 7, 2016, at the request of Officer Caprigno, Michele went to the Pelham Police Department to speak with her regarding the rescue dogs.  Michele provided Officer Caprigno with a written statement.  In her affidavit, Michele states that Officer Caprigno said, "....she was not after me and I would not get into trouble no matter what happened...."  In her affidavit, Michele states that she felt the Pelham Police Department was "getting carried away" with the situation regarding Kevin and the dogs. **(See Affidavit of Michele Stone)**

Officer Caprigno would periodically call Michele and ask for her to provide the location of the Plaintiff in an effort to keep track of his location so she could document if he was moving the rescue dogs.  Once the Plaintiff discovered that his movements were being monitored, he disabled the app on his iPhone.  Once Michele advised Officer Caprigno that she was no longer able to monitor the movements of the Plaintiff, Officer Caprigno stopped calling Michele.  **(See Affidavit of Michele Stone)**

An official is entitled to qualified immunity if the constitutional right alleged to have been violated has not been clearly established under the law. <u>Brosseau v. Haugen</u>, United States Supreme Court 543 U.S. 194 (2004)

Evidence will show that the acts of the Defendants were performed maliciously and in bad faith while wearing their police uniforms for the Town of Pelham and while using Town of Pelham police cruisers.  **(See Affidavit of Kevin Rocheville)**

Evidence will be presented to demonstrate that the acts of the Defendants were performed willingly, wantonly, recklessly, knowingly, intentionally and maliciously.

<u>Malley v. Briggs</u>, 475 U.S. 335, 106 S. Ct. 1092 (1986) - In an action brought under 42 U.S.C.S. § 1983, the same standard of objective reasonableness that is applied in the context of a suppression hearing defines the qualified immunity accorded an officer whose request for a warrant allegedly caused an unconstitutional arrest. Only where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable will the shield of immunity be lost.  In this case, the Arrest Warrant was totally lacking in the fact necessary to support the crime alleged.  Nowhere in the Affidavit for the Arrest Warrant, did Officer Caprigno assert that the Plaintiff caused the physical injuries, alleged in the Complaints, to the rescue dogs.

# B - <u>VIOLATION OF CONSTITUTIONAL RIGHTS 42 U.S.C. Section 1985, (3) CONSPIRACY)</u>

The Defendants engaged in the concerted campaign to intimidate, harass, ridicule and harm the Plaintiff.  The Plaintiff cannot prove by direct evidence that the Defendants agreed to engage in this conduct.  The circumstantial evidence raises a question of fact of the existence of a conspiracy.  In reviewing the officer's egregious conduct that was directed toward the Plaintiff, in

the context of Plaintiff's advising Officer Goulden's wife of an affair, whether true or not, explains the Defendant's conduct. Their conduct was not motivated to bring a criminal to justice but to inflict as much pain (monetary, criminal and personal) on the Plaintiff for harming their brother in blue. The actions in concert to harm the Plaintiff is evidenced by the statements of other officers and the harassing conduct.

The conspiracy was formed for the purpose of depriving the Plaintiff either directly or indirectly of the equal protection of the laws or of equal privileges and immunities under the laws. The conduct of harassment, intimidation and abuse that impaired the Plaintiff's constitutional rights was motivation to avenge the Plaintiff's disclosure of Office Goulden's affair to his wife.

By agreeing to engage in a civil conspiracy, knowing that such conspiracy was illegal, and involved the use of misconduct and abuse of authority, as law enforcement officers the conspiracy caused the Plaintiff injuries of his person and/or his property and/or deprived him of his right and privilege of being a citizen of the United States.

As part of the circumstances supporting Plaintiff's Conspiracy claim, he asserts the failure to arrest Cheryl Bordeleau for a violation of the No Trespass Order issued by the Plaintiff. **(Exhibit # 17)** On June 25, 2014, Cheryl Bordeleau admitted to the Pelham Police Department that she entered the Plaintiff's property in violation of the No Trespass Order. Bordeleau admitted that she was aware of the No Trespass Order and that she entered the Plaintiff's property knowing of its existence. **(Exhibit # 17)** Despite Plaintiff's request that she be charged with Criminal Trespass in violation of the No Trespass Order, the Pelham Police Department declined to bring charges against Officer Goulden's "friend". **(See Affidavit of Kevin Rocheville)**

The execution of the Search Warrant was designed to intimidate and scare the Plaintiff. Accompanying Officer Caprigno when the Search Warrant was executed that alleged cruelty to

animals there were six police officers present as well as two officers from a Street Crime Unit. **(Exhibit # 4)** The police forcibly gained entry to the Plaintiff's residence, despite the fact that the door was unlocked. The officers damaged the Plaintiff's door. **(Exhibit # 5)** In addition to the abundant police presence during of the Search Warrant and the significant damage to the Plaintiff's entry way, Officer Caprigno notified the New Hampshire Family Division for Children, Youth & Families (DCYF) for the purpose of interfering with the Plaintiff's parental rights over his two sons. **(Exhibit # 4)** The Plaintiff and Cheryl Bordeleau are the biological parents of the two boys in question. **(See Affidavit of Kevin Rocheville)** Officer Caprigno further exacerbated the excessive presence of officers, by contacting the Pelham Fire Department to check the condition of Plaintiff's residence. **(Exhibit # 4)**

The concerted effort to "nail" the Plaintiff is further evidenced by the conduct of Attorney Michael McCall, the initial Pelham Police Prosecutor who was involved in the case against Plaintiff. According to the affidavit of Karen DeVore, of Whispers of our Forgotten Animal Rescue, she was threatened by Attorney McCall because he believed she was "favoring" the Plaintiff and she was disparaging the quality of the care that the Pelham Police Department provided to the rescue dogs. **(Exhibit #s 18 & 19)** Ms. DeVore filed a complaint with the New Hampshire Bar Association alleging that she was "pressed very hard to relinquish our right to our dogs as well, stating if we took them, we were letting the accused get away with not having to account for his deeds through restitution". **(Exhibit # 19)** Attorney McCall was also very upset with a posting that Ms. DeVore posted on an internet site, which was critical of the Pelham Police Department. **(Exhibit #s 18, 19 & 20)**.

Since direct evidence of Conspiracy is often difficult to obtain, existence of a Conspiracy must be proved, if at all by attendant circumstances. <u>State v. Gilbert</u>, 115 N.H. 665, 348 A.2d 713 (N.H. 1975).

# V. <u>STATE CLAIMS</u>

## A.    <u>FALSE IMPRISONMENT</u>

The Plaintiff was unlawfully confined when his personal freedom of movement was impeded by the police cruisers. His personal freedom was also impacted when he was arrested and taken into custody as a result of the faulty Arrest Warrant and the lack or Probable Cause. The fact that the police officers had a reasonable belief that the arrest was authorized or justified is not a defense. <u>Larreault v. First National Stores Inc.</u>, 93 N.H. 375, 42 A.2d 288 (N.H. 1945) Probable cause is not a defense to an action for False Imprisonment. *Id.*

Here the Plaintiff has shown that the Arrest Warrant Affidavit was deficient in that the Defendants did not have the necessary probable cause to connect the state of the rescue dogs to the fault of the Plaintiff via Neglect. Nor was the warrant reviewed and signed by a disinterested magistrate. This rational would also apply to the state claim of False Imprisonment. There clearly was no probable cause to surround the Plaintiff's vehicle for forty-five minutes after he paid the Pelham Police Department for veterinary bills which resulted from their seizure of the rescue dogs that were at his residence. After forty-five minutes and without questioning or investigating him for an alleged crime or violation of the Motor Vehicle Code, the police officers moved their cruisers allowing the Plaintiff to finally leave the police station. The Plaintiff's liberty was impacted when he was arrested pursuant to a faulty warrant.

## B.    <u>MALICIOUS PROSECUTION</u>

The Plaintiff has asserted that he was the victim of Malicious Prosecution at the hands of the Defendants.  In a malicious-prosecution suit, actual malice may be presumed by a lack of probable cause. The elements of malicious prosecution are: (1) commencement of a criminal proceeding against the plaintiff, (2) termination of the proceeding in favor of the plaintiff, (3) absence of probable cause for the criminal proceeding, and (4) actual malice.

In this case, the Plaintiff has evidence that meets all four elements:  (1) The Plaintiff was the object of a criminal proceeding against him, via ten counts of Animal Cruelty (2) the Pelham Police Department Prosecutor, Brendan Carroll later terminated the proceeding by opting to nol pros the case prior to trial (3) The Arrest Warrant lacked probable cause because the facts in the Affidavit did not support the crime charges in the Complaints.  No reasonable person can dispute the fact that Officer Goulden was irate and vengeful with the Plaintiff informing Goulden's wife of the affair.  Even if it was not true, Officer Goulden would have been equally irate at the Plaintiff's conduct.  Failure to make an inquiry into the condition of the rescue dogs, prior to the Plaintiff taking custody of them, during the investigation is unreasonable.  Failing to examine the acts of the Plaintiff with regard to the care he was providing to the rescue dogs is unreasonable and amounts to lack of probable cause for the issuance of the arrest warrant (4) A condition that exists when a person makes a statement with either knowledge of its falsity or a reckless disregard for the truth.

There will be facts presented that show the Plaintiff did sustain serious personal injuries as set forth herein, emotional distress, anxiety, embarrassment, humiliation, publication of his arrest, finger printing and photographing.  He did suffer a bruise on his chest when Officer Keenliside chest bumped him at the Pelham Police Station.

The right of the Plaintiff to not be deprived of life, liberty or property without due process of law and the right to equal protection of the law secured by the fourteenth Amendment to the

Constitution of the United States (Art. XIV U.S. Constitution).   The Defendants could not reasonably believe that their conduct was lawful.

## C.    **DEFAMATION**

Evil has been defined as "profoundly immoral and malevolent wickedness depravity" Oxford American Dictionary 3rd Edition.

Even if Officer Caprigno's statement was an opinion, it was clearly based upon undisclosed facts resulting from an investigation.

Accusations of criminal activity generally give rise to "clear factual implications" thus, an average reader could reasonably understand the Officer's statement as actionably factual. Thomas v Telegraph Publishing Co., 155 N.H. 314, 339 (2002)

If the average reader could reasonably understand a statement as actionably factual, then there is a triable issue for a jury determination and Summary Judgement must be denied.   Nash v. Keen Publishing Corp., 127 N.H. 214, 219 (1985).   There was no context to Officer Caprigno's statement.   She stated an admissible fact without any explanation.   Her words were not understood as opinion but a fact made by a police officer conducting an investigation.   The general public knows that police officers do not base an investigation on opinion but that it is based on fact.

## D.    **BATTERY**

Battery is the unprivileged physical contact. Restatement 2nd of Torts § 18.   Officer Keenliside deliberately chest bumped the Plaintiff when he was at the Pelham Police Department Station causing a bruise.   This unprivileged physical contact amounts to a Battery.   Officer Keenliside deliberately chest bumped the Plaintiff a the Pelham Police Station causing a bruise. The intentional act of Officer Keenliside amounted to an unprivileged physical contact.

## E.    **INFLICTION OF EMOTIONAL DISTRESS**

The Defendants' conduct was intentional and their acts were extreme and outrageous as evidenced by the Exhibits and Affidavits submitted by the Plaintiff. The Plaintiff suffered severe emotional distress as a result of the Defendants' harassment and the loss of his co-parenting rights of his two sons. Morancy v. Morancy, 134 N.H. 493, 593 A.2d 1158 (N.H. 1991)

**F.      INVASION OF PRIVACY**

Officer Caprigno used a private citizen to monitor the movements of the Plaintiff utilizing electronic equipment. The Defendant, Officer Caprigno, used a private citizen to do what she could not do without a warrant or a court order.

## VI. CONCLUSION

For all of the grounds stated in the Plaintiff's Memorandum of Law, Exhibits and Affidavits, the Defendants Motion for Summary Judgement should be denied.

Dated: September 16, 2021                              Respectfully Submitted by,


                                                       William Aivalikles, Esq.


I, Kevin Rocheville, under oath state that the facts contained herein are true to the best of my knowledge and belief.


                                                       Kevin Rocheville


STATE OF NEW HAMPSHIRE

COUNTY OF HILLSBOROUGH

Personally appeared the above-named Kevin Rocheville, this 16th day of September, 2021, and made oath that the within statements made by her are true to the best of her knowledge and belief.

Before me,

Notary Public/Justice of the Peace

LISA M CENSABELLA
Notary Public - New Hampshire
My Commission Expires Aug 4, 2026

## CERTIFICATE OF SERVICE

I certify that a copy of this filing was served via the Court's ECF filing system upon counsel of record.

Dated: September 16, 2021

William Aivalikles, Esq.