UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF NEW HAMPSHIRE

Kevin Rocheville,                                )
                                                 )
v.                                               )
                                                 )
Thomas Goulden, Matthew Keenliside,              )      Civil Action No. 19-CV-01169-PB
Brian McCarthy, Joseph O'Roark,                  )
Michael McCall, Allison Caprigno,                )
Jody Harris-Stern, John Does,                    )
Jane Does and Town of Pelham, NH                 )
                                                 )

## **AFFIDAVIT OF KEVIN ROCHEVILLE**

KNOW ALL MEN BY THESE PRESENT, that I, Kevin Rocheville, of Pelham, NH under oath depose and say as follows:

1.      I reside at 31 Jonathan Road, Pelham, NH, 03076 and I am 56 years old.

2.      My educational background consists of attending the University of Lowell. However, I did not obtain a degree. I have taken vocational training courses and seminars at the Greater Lowell Technical School for which I received a diploma as a Phase 3 Auto Mechanic.

3.      I have no criminal record.

4.      For the past twenty (20) years I have been actively involved with rescuing dogs. I have taken various training courses in handling dogs. I was a volunteer in assisting the Town of Pelham concerning dog issues. I volunteered my services to various dog adoption facilities and I have always been concerned with the welfare of dogs. It is my belief that dogs should not be euthanized simply because they do not have a home. I have various certifications relative to the care of rescue dogs. I have worked for ARNE for over ten years at the Pelham Fish and Game facility kennel, which is operated by the Town of Pelham and staffed by ARNE Members. At this

1

facility, I fabricated kennels, replaced fencing, brought in a thousand gallons of water when the facilities well failed and I brought in additional gallons of water for the dogs. I also ran errands for the facility by bringing the dogs to veterinary appointments, dropping dogs off, etc. I spent approximately five thousand dollars ($5,000.00) at Angel Memorial Hospital for a rescue dog, Onyx, who was treated for the parvovirus. Onyx was one of the dogs that was confiscated by the Pelham Police Department. Officer Caprigno confiscated all of the veterinary bills. She told me this bill was fraudulent. I even saw a post on a social medial site regarding her fraud claim. This information could have only come from Officer Caprigno. She also told me that the dogs that I rescued were to be euthanized.

5.      I have expended thousands of dollars in veterinarian bills for the rescue dogs that I have rescued in the past as well as those rescue dogs that were confiscated. I found adoptive homes for dogs that I've rescued. I've spent thousands of dollars feeding dogs that I've rescued in addition to other significant expenses. As a result of the criminal charges brought against me by the Pelham Police Department, I was forced to expend thousands of dollars for the representation of an attorney to fight the criminal charges.

6.      Thomas Goulden was employed by the Town of Brookline, New Hampshire as the Chief but was fired on or about April 30, 2010. After Goulden was fired by the Town of Brookline he was hired by the Town of Pelham, New Hampshire as a police officer. Shortly after his hire by the Pelham Police Department, Goulden left to become the Chief of Police for the Town of Shirley, Massachusetts. While serving as Chief for approximately two (2) years, Goulden was fired and was rehired by the Town of Pelham, New Hampshire as a police officer.

7.      On or before May 20, 2014, Goulden began to have a sexual affair with my girlfriend, Cheryl Bourdeleau, who is the mother of my two sons. Goulden previously had a sexual relationship with Bourdeleau when she was eighteen-years-old (18).

2

8.      On or about May 22, 2014, I informed Goulden's wife of the sexual affair that Goulden was carrying on with Cheryl Bourdeleau.

9.      Goulden admitted to his wife, Tracey Goulden, that he had a sexual relationship with Cheryl Bourdeleau.

10.     After, I informed Goulden's wife of the sexual relationship with Cheryl, Goulden, Keenliside, John Does, Jane Does and Caprigno engaged in a concerted, intentional campaign to punish and humiliate me.  As a result of their conduct, my life in the Town of Pelham, New Hampshire was "living hell".  This conduct was motivated to make me pay for telling Goulden's wife about his infidelity and to drive me out of town.  Attorney McCall offered me a plea deal.  He said that if I moved out of town, they would dismiss the charges against me.

10a.    There was a No Trespass Order issued against Cheryl Bordeleau.  She was not allowed to come onto my property.  Cheryl told the police that she entered my property, having full knowledge of the No Trespass Order.  As the victim, I requested that the Defendants file charges against her for violation the No Trespass Order.  They refused to do so.

13.     On or about September, 2014, Goulden advised me that if "I didn't watch it, he would put a round in my head".  I was stopped by Goulden and requested to perform field sobriety testing  While performing the field sobriety tests, Goulden pushed me.  No charges were filed by the Defendants, as  a result of this stop.

12.     John Doe, a Lieutenant, advised me, on or about October 18, 2016, when he was acting as a civil standby at my residence, that "you should have kept your mouth shut and not told his wife" and when you "fuck with one of us, you fuck with us all."

14.     In December 2016, I went to the Pelham Police Department to pay some veterinarian bills in order to retrieve some of my dogs that were confiscated.  While in the lobby I was assaulted by Lieutenant Keenliside.   Lieutenant Keenliside bumped into my chest and then

3

said, "What the fuck are you looking at", "what is your fucking problem?" Lieutenant Keenliside and Caprigno began to laugh at me. The bump I received from Lieutenant Keenliside caused a bruise.

15.    When I walked out of the Police Department, there were a number of Pelham Police cruisers blocking my vehicle and my ability to back out of the parking space. After forty-five (45) minutes the police cruisers left.

16.    I brought to Chief McCarthy, in his capacity as acting Chief, the intimidation campaign that was being waged against me by the Pelham police officers. McCarthy told me that he would look into it. Upon information and belief McCarthy took no steps to stop the intimidation and harassment campaign waged by the Pelham Police Department Officers and the intimidation and harassment continued while he was still employed by Pelham. When Chief O'Roark, was Chief, I also advised him of the harassment yet the campaign of intimidation and harassment continued. The intimidation was severe and I feared for my well-being. I also contacted the Federal Bureau of Investigation (FBI) and spoke with Agent Katherine Thibeault.

17.    According to Edmund Gleason, who was chairman of the Pelham Board of Selectmen, as of June 10, 2014, he documented at least one stop of my vehicle by Officer Montano. Officer Montano stopped me on February 14, 2014 at 7:08 p.m., for failure to use a my turn signal when I made a left turn. Officer Montano never asked for my driver's license or registration and he let me go without issuing a summons. On April 7, 2017, I was stopped by Lieutenant Anne Perriello. Lieutenant Perriello claimed she stopped my because I was using my cell phone while driving. I videotaped this stop. No charges were filed. There were a number of stops over a two and one half year period in which no charges were filed, yet they do not appear on the police logs.

18.    Officer Caprigno, who was the animal control officer, obtained a search warrant to search my residence for abused animals.

19.    In addition to Office Caprigno, there were at least six police officers and two police officers from a street crime unit who were present during the search warrant.

20.    Despite the fact that I have never had a criminal record, no motor vehicle record nor engaged in any prior conduct that would warrant the use of nine police officers to execute an Animal Cruelty Warrant, the police officers gained entry to my residence by smashing my front door. The police officers damaged my entry door unnecessarily. Further, there was no need to use this excessive force as the door was unlocked. My neighbor, Richard Tarpey, witnessed the police enter my home while carrying military grade rifles.

21.    The use of the forced entry by the Pelham Police Department and the excessive number of police officers present was part of the Department's systemic campaign to harass, frighten and drive me out of the Town of Pelham.

22.    The rescue dogs that I fostered and that were the subject of the criminal complaint, were in my residence for approximately two months.

22a.    Beginning on or after October 18, 2016 Caprigno threatened my ex-girlfriend, Michele Stone, who is a registered nurse. Even though Michele admitted to Officer Caprigno that she helped to care for the rescue dogs, no charges were filed against her.

23.    On or about October 18, 2018, Michele did track my location and when Officer Caprigno would call her, she would ask about my location.

24.    In addition to the activity that was a part of the concerted campaign of intimidation and harassment, I was slandered by various people and was called a "vicious little man" and an "evil little man" by Caprigno.

26.    Michele is familiar with Officer Caprigno in her capacity as the Animal Control Officer for the Town of Pelham. Sometime in October of 2016, Allison Caprigno came to my residence that I shared with Michele, to advise of a loose dog complaint. She told us the Pelham

Police Department had received a complaint that a dog was running up the street and had chased someone. She provide us with a description of the dog. The only dog we had at that time that matched the description was Allie, who was heavily pregnant and was not even able to go up the stairs by herself. Michele had been carrying Allie up and down the stairs and caring for her. Allie could not have been outside, let alone running down the street chasing someone.

27.    The next time Michele had contact with Allison Caprigno was the night she left my residence at my request on October 6, 2016. She was very upset with me.

28.    Officer Caprigno told Michele that I was a "vicious little man" and an "evil little man".

29.    On or about October 26, 2016 Officer Caprigno caused to be issued ten (10) Class A Misdemeanor Complaints Alleging Animal Cruelty against me.

30.    As a result of the criminal charges and the widespread publication of these charges in area newspapers and television news coverage (WMUR, Fox TV and Channel 7), my parental rights to my two (2) sons has been curtailed and my relationship with my two sons has been greatly impacted. Cheryl Bordeleau is the mother of my two children. A number of internet postings held me up to ridicule and the publication of the false information destroyed my livelihood, business and business reputation. This conduct exacerbated my emotional distress. It was to the extent that people were calling me a "monster".

31.    As a result of the publication of my arrest for animal cruelty, my name appeared on the television news coverage and in the newspaper that was circulated in the Pelham area as well as state wide and on the internet. As a result of the false charges, I was subjected to a barrage of verbal abuse, attacks, insults, and intimidation by the general public. The publication of my arrest and the allegations were published on local television, local newspapers and the internet, to include social media pages. These articles and stories were a result of the Pelham Police Departments

efforts to publicize my arrest. Just about everyone I knew avoided me because of the allegations that were being made against me. I was devastated because I love dogs and have saved many from death. I could not bear that others thought I was a dog abuser.

32.     Officer Caprigno on or after October 18, 2016 disseminated a derogatory statement that was heard by third parties as follows: "He is an evil little man." She further stated that I "needed counseling, and was not right in the head." Officer Caprigno repeatedly threatened that I "would be going to jail for at least two (2) years" and "pack your toothbrush." She said she would "destroy" me, that I would "never own another dog." One time when she came to my house for an inspection, she told me with a grin that Oreo or Bravo had been "euthanized" and that Cooper was "euthanized." These and other statements were made purposely to harass and cause me emotional distress.

33.     As a result of the publication of my arrest and the dissemination of false, derogatory information, the business manager of Local 4 stated that, "he could not put me on any jobs because of the bad P.R and I needed to straighten out my personal life." I had been a member of Local 4 for twenty (20) prior to my being removed from the availability list for jobs.

34.     As a result of my inability to work the union jobs, I lost a minimum of $1,000 per week. I had to sell my equipment, at a significantly lower price than what they were worth to pay for my defense attorney's fees and my living expenses. My house was subject to foreclosure and I have filed personal bankruptcy, under Chapter 13, seeking a reorganization that has been approved by the Bankruptcy Court.

35.     At a hearing prior to the State nol prosing the charges against me, Judge Stevens of the Salem District Court stated to the Pelham Police Prosecutor, "Don't bring this in front of me again. Don't waste the Court's time.". Unfortunately, Office Caprigno's threat of "destroying" me came very close to being accomplished. I have suffered significant distress and financial loses as

a result of the unnecessary publication of the allegations that were made against me, the derogatory statements and the campaign to evict me from the Town of Pelham.

36.     Even one of the members of the Pelham Police Department questioned the probable cause for the issuance of the Search Warrant. (see attached email dated October 13, 206 from Officer Matthew Keenliside to Officer Chase) (Exhibit # 2).

37.     In a police report, Officer Caprigno stated that the rescue dogs "appeared to be in good health".  After the Search Warrant was executed, Officer Caprigno was interviewed by a reporter from Boston 25 News.  The conversation was reported in a news story that was shown via television and is available online as well.  During the conversation, the reporter asks "if it was usual that dogs would be returned to an accused abuser".  Officer Caprigno replied, "Uh, not normally. I think it's safe to assume that he was thinking he was doing a good thing, and when it came down to it, he got overwhelmed."

38.     I did not cause any of the medical conditions that the rescue dogs had or developed. My conduct was not criminal except in the eyes of those that wanted to punish me because I disclosed the affair.

Dated: September 16, 2021

_____
Kevin Rocheville


STATE OF NEW HAMPSHIRE
COUNTY OF HILLSBOROUGH


Personally appeared the above named Kevin Rocheville, this 16th day of September, 2021, and made oath that the within statements made by her are true to the best of her knowledge and belief.

Before me,

_____
Notary Public/Justice of the Peace

8

LISA M CENSABELLA
Notary Public - New Hampshire
My Commission Expires Aug 4, 2026