UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| Kevin Rocheville, | ) |
| | ) |
| v. | ) |
| | ) |
| Thomas Goulden, Matthew Keenliside, | ) Civil Action No. 19-CV-01169-PB |
| Brian McCarthy, Joseph O'Roark, | ) |
| Michael McCall, Allison Caprigno, | ) |
| Jody Harris-Stern, John Does, | ) |
| Jane Does and Town of Pelham, NH | ) |
| | ) |

### AFFIDAVIT OF KAREN DEVORE

KNOW ALL MEN BY THESE PRESENT, that I, Karen DeVore, of DeLand, FL, under oath depose and say as follows:

1. I reside at 433 Berwick Circle, DeLand, FL, 32724.

2. For the past ten years I have been actively involved with rescuing dogs. I have worked with my veterinarians regarding how to treat and care for dogs with various medical conditions.

3. Prior to March of 2016, I was employed with Furbridge Animal Rescue based out of Westchester County, NY. Here I held the position as the Vice President and a Volunteer for one year.

4. In March of 2016, I left the Furbridge Animal Rescue to start my current animal rescue agency, Whispers of Our Forgotten Animal Rescue, Inc. I have been operating as the President and Co-Founder of this organization since April, 2016.

1

5. I first came into contact with Kevin Rocheville while I was a volunteer at Furbridge.

6. Since 2015, I have worked with Kevin to preserve the welfare of dogs who are in need of a permanent or temporary home. Kevin has been an amazing asset to the rescue agencies, often taking in numerous rescue dogs at once. It has been my observation that all Kevin has ever wanted to do was help and love abused and abandoned dogs. He could get dogs that were so broken, they were ready to be put down, to trust him and to love him. This really says a lot about his character and his work fostering rescue dogs.

7. I first became involved with the despicable situation between Kevin and the Pelham Police Department in October of 2016. At this time, Kevin had one of our dogs, Ally who is a Rottweiler mix. Ally was pregnant and delivered during the time Kevin was caring for her. The Vice President of our Rescue, Mary Anne Veres of Long Island, NY, contacted Animal Control Officer (ACO) Allison Caprigno prior to the rescue dogs being seized, on October 14, 2016, because she had received information from another rescue that there was an issue with some of the dogs we had placed at Kevin's home. On October 18, 2021 which was the week after Mary Anne spoke with her, ACO Caprigno seized Ally and her puppies from Kevin's residence. We were never notified by ACO Caprigno of the seizure. We found out from others, who had seen the newspaper and television news broadcasts and were talking about it on the internet.

8. As President of the Rescue, I contacted ACO Caprigno as soon as I heard of the seizure. She took my information and said she would get back to me in a "couple of days" as she was going through all kinds of emails and phone messages of people and rescues who were claiming to be the legal owners of the rescue dogs.

2

9. More than a "couple of days" went by so I contacted the police department to speak with ACO Caprigno to check the status of our rescue dogs. Unfortunately, I cannot remember the exact date, that I attempted to contact her. I was put through to Prosecuting Attorney Michael McCall. During our first telephone conversation, he told me that he really didn't know what was going on and that he was not "up to date" on the case as he had just received it not long ago (approximately a week or two). At this point, I considered our dogs and our Rescue to be victims and that the State was representing us. I soon found this to be a figment of my imagination. Attorney McCall advised that he believed our paperwork had been falsified as they were getting information from a rescue in NY, Looking Glass Animal Rescue run by Jodie Stern-Harris, which vilified us. We were made to jump through hoops and were given no information on our animals, other than they were in a better setting than they had been with our foster home.

10. During my interaction with ACO Caprigno and Attorney McCall, they could not say enough bad things about Kevin. I do not remember their exact words but Attorney McCall was very upset that I was still in contact with Kevin and both he and ACO Caprigno had nothing nice to say about Kevin and constantly made derogatory remarks about Kevin and his character.

11. Throughout this situation, we were lied to about the dogs and given NO pictures, medical information or anything. This deceit continued even after Attorney McCall went to court. The dogs were to be released from evidence and returned to their owners. He berated me for wanting to go over the charges that were incurred while the police department had our dogs. He repeatedly told me he didn't know anything about our rescue dogs and when I insisted that he provide a detailed accounting for all costs incurred, he tried to bully us and said that none of the other rescues had a problem with the amount they were charged.

3

12. This, on the heel of stating that everyone else had turned their dogs over to the Court and that their dogs were going to a rescue in New Hampshire. He was pressing hard for us to relinquish our rights to our dogs as well as stating that if we took them, we were letting the accused get away with not having to account for his deeds through restitution. Again, we were pushed back and they refused to return our dogs. We did not receive our dogs back for approximately another month, running up the boarding and medical bills to approximately $2,991.00.

13. Through this entire situation, we were given no information on our dogs. Once we paid the fees, we were still not given any access to medical records of our dogs. When we finally did get the medical records, we were dismayed to find that one of our nine of dogs, who had been in the care of the Hudson ACO and was just a puppy, had been poisoned as a result of the ACO's careless handling of cleaning materials.

14. When Ally, the mother of the puppies, was taken into custody on October 18, 2016, it was recommended that she have a skin scrape done to rule out mange versus poor care. The skin scrape was not done until six weeks after the recommendation. We were not privy to any of this information so that we could assist in the care of our dogs. Instead, they were made to suffer needlessly due to the inadequate care they received from the ACOs. Ally's skin condition, since being removed from Kevin's residence, had worsened due to the lack of care of the Pelham Police Department.

15. It is my opinion as a long-time, educated rescue coordinator, that the Pelham Police Department committed gross negligence verging on animal cruelty while the animals were in their care. The rescue dogs were better cared for when they were at Kevin's residence. He

had purchased additional medicine for them and paid for numerous veterinary bills in order to ensure that the rescue dogs were cared for properly.

16. Kevin was known as the "go to" person for many rescues, to include Looking Glass Animal Rescue, who at one point had placed ten or more rescue dogs with Kevin. When no one else would take a dog or there was a problem with another rescue in New Hampshire, they would turn to Kevin for help and he would oblige for the good of the dogs and to keep them safe.

17. I would like to reiterate the fact that during my interactions with Kevin, I found him to be a caring and giving person who got dogs that were so broken that they were ready to be put down, to trust him and to love him. This speaks volumes for his character and we were lucky to have someone like him to take care of those rescue dogs in the most need.

Dated: September 16, 2021

_____
Karen DeVore

STATE OF ~~NEW HAMPSHIRE~~ Florida MB
COUNTY OF ~~HILLSBOROUGH~~ Volusia MB

Personally appeared the above-named Karen DeVore, this 16th day of September, 2021, and made oath that the within statements made by her are true to the best of her knowledge and belief.

Before me, Makayla Brown

_____
Notary Public/Justice of the Peace

Notary Public State of Florida
Makayla Brown
My Commission GG 312907
Expires 03/18/2023

5