## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

Kevin Rocheville

           v.                          Case No. 19-cv-1169-AJ

Thomas Goulden, et al.

## O R D E R

     Kevin Rocheville brought federal claims under 42 U.S.C. § 1983 and § 1985, along with state law claims, arising from his interactions with the Pelham police and his arrest on charges of animal cruelty.  The defendants, who are present and former Pelham police officers and the Town of Pelham moved for summary judgment.  Rocheville objects.

## Standard of Review

     Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A material fact is one that "'carries with it the potential to affect the outcome of the suit.'" French v. Merrill, 15 F.4th 116, 123 (1st Cir. 2021) (quoting Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000)).  A genuine factual dispute exists if "a reasonable jury could resolve the point in the favor of the non-moving party." Id.  The court construes the summary judgment record in

the light most favorable to the nonmoving party.  Benson v. Wal-Mart Stores East, L.P., 14 F.4th 13, 17 (1st Cir. 2021).

To oppose a motion for summary judgment on issues for which the nonmoving party would bear the burden of proof at trial, the nonmoving party must provide competent evidence to show that a genuine material factual dispute exists.  Perez v. Lorraine Enters., 769 F.3d 23, 29-30 (1st Cir. 2014).  Such evidence may include affidavits that are made on personal knowledge, "set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4).  The non-moving party cannot rely "upon conclusory allegations, improbable inferences, and unsupported speculation."  Benson, 14 F.4th at 17.

**Background**

A.  Rocheville Affidavit

As a preliminary matter, Rocheville submitted his own affidavit in support of his opposition to summary judgment.  The defendants challenge many statements in the affidavit as not complying with the requirements of Rule 56(c)(4).  Rocheville did not respond.

"An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or

2

declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4); see also Sarbanis v. Fed. Nat'l Mortg. Ass'n, No. 17-CV-037-JD, 2017 WL 3822034, at *1 (D.N.H. Aug. 30, 2017).  In addition, an affidavit must present "facts as opposed to conclusions assumptions, or surmise." Perez v. Volvo Car Corp., 247 F.3d 303, 315–16 (1st Cir. 2001).  When a party moves to strike an affidavit, the court is instructed to use "a scalpel not a butcher knife" to remove the inadmissible parts and credit any remaining parts. Id. at 315.

"[P]ersonal knowledge is the touchstone" of the admissibility analysis. Id. at 315-16.  "[A]n affidavit must be based on the personal knowledge of the affiant, not on information provided by someone else, and must show the basis for the affiant's knowledge." Hoffman v. Applicators Sales & Serv., Inc., 439 F.3d 9, 16 (1st Cir. 2006).  An affidavit that repeats conclusory allegations in the complaint and does not provide "specific factual information made on the basis of personal knowledge" is not sufficient to oppose summary judgment. Garman v. Nat'l Railroad Passenger Corp., 844 F.3d 307, 315 (1st Cir. 2016).

Rocheville swore to his affidavit, stating that his statements were "true to the best of [his] knowledge and belief." Doc. 41-2, at 8.  Statements based on the affiant's belief do not satisfy Rule 56(c). Sweeney v. Santander Bank,

N.A., 2021 WL 4224312, at *6 (D. Mass. Sept. 16, 2021).
Therefore, statements based on Rocheville's belief, but not his
personal knowledge, must be struck.

Paragraph 6 of the affidavit consists of statements about
Goulden's employment without any information to show that
Rocheville has personal knowledge of these matters.  In
paragraph 7, Rocheville states his belief about others'
relationships without any basis for his personal knowledge.
Paragraph 9 is a statement attributed to a defendant without a
basis for Rocheville's personal knowledge.  Paragraph 10
presents Rocheville's belief about the reasons for treatment he
received in the town, but only the last two sentences show
personal knowledge.  Paragraph 10a provides information about a
document that can speak for itself, a statement by another
person, and a statement about Rocheville's request that the
defendants file charges against his former girlfriend.  Only the
last two sentences are based on personal knowledge.  Paragraph
22a pertains to someone else, and Rocheville does not show the
basis for his personal knowledge of that matter, other than
hearsay.  Statements in paragraph 32 that are taken from other
people are hearsay.  To the extent Rocheville provides his
opinions, such as characterizing actions as excessive force,
characterizing defendants as having improper motives, and

characterizing statements as slander, those parts of the affidavit are conclusory and are not considered.

Accordingly, the information improperly presented in Rocheville's affidavit is not considered for purposes of his objection to the motion for summary judgment.


### B.   Exhibits

The defendants also challenge the exhibits Rocheville submitted in support of his objection to summary judgment.  The defendants contend that many of the records, veterinary bills, documents that predate the search of Rocheville's home, text messages, and other exhibits are not properly identified and are not competent under Rule 56.  The court agrees.  Most of the exhibits, however, have little or no effect on the outcome of the motion for summary judgment.  To the extent the exhibits are considered, the court notes the defendants' objections.


### C.   Factual Background

Kevin Rocheville lives in Pelham, New Hampshire.  He has been involved for many years with dog adoption and working with dogs.  He has also cared for rescue dogs in his home.

He brought this lawsuit in state court, alleging federal and state claims against Pelham and Pelham police officers.  The

defendants removed the case to federal court based on federal
question jurisdiction, 28 U.S.C. § 1331.

### 1.   Arrest and Prosecution

In September of 2016, Allison Caprigno, the Pelham animal
control officer, received a report that a dog was loose on the
street where Rocheville lived and that the dog came from
Rocheville's home.  Caprigno went to Rocheville's home where she
met him and his then girlfriend, Michelle Stone.  Rocheville and
Stone said that the stray dog was not one of theirs.

While there, Caprigno saw two dogs.  Neither was registered
with the town, and one dog, which was outside, seemed frail.
Rocheville said that he also had six other dogs and that he was
fostering all eight dogs, along with their puppies.  Caprigno
told Rocheville that even foster dogs had to be registered.

On October 5, 2016, Jody Harris from Looking Glass Animal
Rescue in Connecticut called Caprigno because she was concerned
about dogs she had put in Rocheville's care.  On October 6,
2016, Caprigno and Officer Ryan Donovan responded to a criminal
trespass/domestic disturbance at Rocheville's home, involving
Rocheville and Stone.

Stone came to the police station the morning of October 7,
2016.  Stone told Caprigno that Rocheville had up to thirty-five
dogs in his home and showed photographs of twenty to thirty dogs

6

in crates.  Other photographs showed dogs in the basement and
the garage.  Caprigno noted that the dogs were underweight and
did not appear to have food or water.  Later in the day on
October 7, Caprigno went to Rocheville's home to help a
volunteer from Looking Glass Animal Rescue take back the dogs
that belonged to that organization.  During the visit, Caprigno
saw four pit bull dogs in crates in the basement and other dogs
in the garage and noted pools of urine and feces in the crates.

During the next few days, Caprigno received calls from
animal control officers in other towns who reported that
Rocheville was leaving dogs with people in their towns.  They
reported that several of the dogs were in poor condition.  Stone
told Caprigno that she was monitoring Rocheville's movements
through the "track my iPhone" application on his cell phone.
Stone thought that Rocheville was moving dogs to Lincoln and
Sudbury in Massachusetts, and Rocheville has confirmed that he
was taking dogs to other locations, including Sudbury.

On October 17, 2016, Caprigno applied for a warrant to
search Rocheville's home for evidence of animal cruelty in
violation of NH RSA 644:8.  She provided a six-page affidavit in
support of the application that described the conditions she had
seen at Rocheville's home and the reports Stone had provided.
Doc. 28-5.  New Hampshire Circuit Court Judge Robert Stephen

reviewed the affidavit and application and signed the search warrant on October 17, 2016.

The search warrant was executed on October 18, 2016. Rocheville was not home at the time of the search. Caprigno participated in the search, along with other Pelham police officers and animal control officers from three other towns. Some of the officers carried guns. The officers forced a door, which caused damage, to enter the home.

Once they were inside Rocheville's home, Caprigno noted a strong smell of ammonia, piles of feces on the floor, urine stains on carpets, and other urine stains. Dogs and puppies were lying on soiled blankets and newspapers. The dogs had little water and no food. The walls had dirty claw marks, and it appeared that a dog had chewed a hole in the floor. Photographs were taken of the home and the dogs. The officers removed ten adult dogs and eight puppies. The dogs were underweight, had illnesses, and had urine and fecal scalding on their feet.

Caprigno charged Rocheville with ten counts of cruelty to animals, a misdemeanor under NH RSA 644:8. She applied for an arrest warrant, with a supporting affidavit, which was submitted to a Justice of the Peace, Brenda Rizzo, who worked at the

Pelham Police Department.[1]  Rizzo signed the arrest warrant on October 26, 2016.  Doc. 28-8.  Rocheville was arrested by Sergeant Brian Barbato, who is not a defendant, on October 27, 2016.

The dogs taken from Rocheville's home were returned to shelters and some were returned to Rocheville.  Rocheville contends that the dogs were injured and mistreated while in the care of the Pelham police.  When Rocheville went to the police station in December of 2016 to pay bills and retrieve some of the dogs, he contends that Lieutenant Keenliside bumped into his chest, causing a bruise, and asked him what he was looking at.[2] Rocheville also contends that Pelham police cruisers blocked his car so that he could not leave for forty-five minutes.  He further states that Pelham police officers stopped him for traffic violations but did not issue any citations.  Rocheville perceives a pattern of harassment and intimidation by the Pelham police.

---

[1] Rocheville states that Brenda Rizzo was the records clerk at the Pelham Police Department.  The defendants represent that the arrest warrant was signed by a justice of the peace but do not address where Rizzo worked.

[2] The exhibit that Rocheville cited in support of this incident, Exhibit 2, is a string of emails dated in October of 2016 that do not pertain to any incident that might have occurred in December of 2016.  Keenliside and Caprigno both state in their affidavits that no physical contact occurred.

Police Prosecutor Michael McCall handled Rocheville's case until Brendan Carroll took McCall's place.  Carroll nolle prossed the charges against Rocheville in May of 2017.

Rocheville's arrest and the prosecution were covered by the media.  Rocheville represents that information about the charges against him and statements about him made by Caprigno were posted on social media.  He contends that the publicity impacted his parental rights over his two sons.  He also contends that the publicity caused him to lose union work.

### 2.   Interactions with Thomas Goulden

Before the events that lead to the charges against him, Rocheville had interactions with former Pelham Police Officer Thomas Goulden.  Rocheville's then girlfriend, Cheryl Bordeleau, and the mother of his two children had worked with Goulden many years before.[3]  She was also a hairdresser in Pelham, and Goulden was one of her clients.  In May of 2014, Rocheville suspected that Bordeleau and Goulden were engaged in a sexual relationship.[4]

In May of 2014, Rocheville informed Goulden's wife that Goulden and Bordeleau were having an affair.  Rocheville

---

[3] In his affidavit, Rocheville spells the name Bourdeleau, but he and the defendants otherwise use Bordeleau.

[4] Goulden denies that any sexual relationship existed.

contends that Goulden told him in September of 2014 that if he did not watch it, Goulden would put a round in his head.  At an unspecified time in 2014, Goulden stopped Rocheville in his car and conducted a field sobriety test.  During the test, Goulden pushed Rocheville.  No charges were filed against Rocheville as a result of the stop.

Rocheville contends that after he told Goulden's wife about the suspected affair, Pelham police officers attempted to punish and humiliate him.  He contends that Bordeleau entered his property at an unspecified time when there was a no trespass order against her.  Rocheville wanted charges brought against Bordeleau, but the defendants refused to charge her.

Other than the traffic stop in 2014 and violation of the no trespass order without charges, the conduct Rocheville cites as harassment occurred two and a half years later, in October of 2016, and thereafter.  Goulden left the Pelham Police Department in January of 2015, long before the animal cruelty issues arose that lead to Rocheville's arrest.

3.  <u>Hearing</u>

A hearing was held on the motion for summary judgment and objection on February 14, 2022.  In the course of the hearing, counsel on behalf of Rocheville agreed that he lacked evidence to prove his second federal claim, conspiracy in violation of 42

U.S.C. § 1985, Count II.  As a result, Rocheville has withdrawn Count II.  He has also withdrawn all federal claims against the Doe defendants.

With respect to his state law claims, counsel on behalf of Rocheville agreed that he could not proceed with claims against Doe defendants and withdrew those claims.  He withdrew all or parts of many other claims for lack of evidence and/or as barred by the applicable statute of limitations.

Specifically, Rocheville withdrew the state law civil conspiracy claim against Pelham, Count III.  He withdrew the false imprisonment claim, Count IV, due to a lack of evidence and the statute of limitations.  Rocheville withdrew his assault and battery claim, Count V, against Goulden because it is barred by the statute of limitations.  Rocheville also withdrew his malicious prosecution claim, Count VI, and his abuse of process claim, Count VII, against Pelham, Keenliside, and Goulden.  He withdrew his intentional infliction of emotional distress claim, Count VIII, against Goulden.

## 4.   Claims Remaining in the Case

Following withdrawal of claims and parts of claims during the hearing, only one federal claim remains, along with parts of several state law claims.  The claims that remained, following the hearing, are as follows:

Count I – Violation of Fourth and Fourteenth Amendment rights brought under 42 U.S.C. § 1983 against Caprigno.

Count III – State law civil conspiracy against Goulden and Caprigno.

Count V – Assault and battery against Keenliside.

Count VI – Malicious prosecution against Caprigno.

Count VII – Abuse of process against Caprigno.

Count VIII – Intentional infliction of emotional distress against Keenliside and Caprigno.

Count IX – Defamation against Caprigno.

Count X – Defamation per se against Caprigno.

<u>**Discussion**</u>

The defendants move for summary judgment on Rocheville's remaining federal claim on the grounds that Rocheville cannot prove that his arrest violated his constitutional rights, that they are entitled to qualified immunity, and that Rocheville cannot show any basis for municipal liability.  With respect to the state law claims, the defendants noted that in the absence of the federal claims, the court may decline to exercise jurisdiction over the state law claims.  Alternatively, the defendants contend that they are entitled to summary judgment on those claims on the merits.  Rocheville objects to summary judgment.

A.   Count I – Federal Claim under § 1983

In his complaint, Rocheville alleged under § 1983 that the defendants violated his rights to due process and equal protection under the Fourteenth Amendment and violated his rights of privacy and "free movement" under the Fourth Amendment.[5]  Rocheville states in his objection to summary judgment that the defendants violated his right to free movement and his right to privacy but also adds new claims that the defendants violated his right to have a relationship with his sons and that his arrest violated his rights under the Fourth Amendment.  During the hearing, Rocheville narrowed the claim to be brought against only Caprigno.

1. Due Process and Equal Protection

It is unclear whether Rocheville intends to maintain claims that Caprigno violated his rights to due process and equal protection under the Fourteenth Amendment.  If so, those claims do not survive the motion for summary judgment.

To recover under a substantive due process claim, a plaintiff must show that the defendants' misconduct shocks the conscience.  Marrero-Rodriguez v. Municipality of San Juan, 677

_____

[5] Section 1983 provides a cause of action for a violation of a constitutional right by a person who was acting "under color of any statute, ordinance, regulation, custom, or usage, or any State."

F.3d 497, 501 (1st Cir. 2012).  Negligent conduct cannot meet the conscience shocking standard.  Id.  Instead, challenged actions are most likely to satisfy the conscience-shocking standard if they are "conduct intended to injure in some way unjustifiable by any government interest."  Id. at 502.

Rocheville has not provided evidence of conscience-shocking actionable conduct by Caprigno.  To the extent his claim is based on the alleged chest bump incident, that involved Keenliside, who is not a defendant.  Similarly, Rocheville has not shown that Caprigno blocked his car while it was parked at the police station or that she used excessive force during the execution of the search warrant.  To the extent a substantive due process claim is based on the search of his home or his arrest, as is discussed in more detail below, ample probable cause existed for both the search warrant and the arrest. Neither the search nor the arrest supports a substantive due process claim.  See, e.g., Kiernan v. Town of Hudson, 2015 WL 541397, at *4 (D.N.H. Feb. 10, 2015).

Rocheville also has provided no evidence of an equal protection violation.[6]  The Fourteenth Amendment Equal Protection Clause provides that a state cannot "deny to any person within

---

[6] During the hearing, counsel on Rocheville's behalf acknowledged that there was no evidence that the defendants acted with discriminatory animus for purposes of the § 1985 claim, Count II.

its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  If the discrimination alleged does not involve either a fundamental right or a suspect classification, the challenged conduct is addressed under the rational basis test. Armour v. City of Indianapolis, 566 U.S. 673, 681 (2021); A.C. by Waithe v. McKee, 23 F.4th 37, 46 (1st Cir. 2022).  When reviewing governmental action under "the forgiving rational basis standard, the [government] will prevail so long as it articulates some reasonably conceivable state of facts that could provide a rational basis for the action."  Id.

Rocheville has not identified any protected classification or even demonstrated circumstances that would support a finding of discrimination.  He also does not assert discrimination under a class of one theory.  See, e.g., Zell v. Ricci, 957 F.3d 1, 13 (1st Cir. 2020).  For purposes of summary judgment, Rocheville points to no evidence that would support an equal protection claim.  Therefore, the defendants are entitled to summary judgment on Rocheville's claims that they violated his rights to substantive due process and equal protection under the Fourteenth Amendment.

### 2.   Privacy and Free Movement

Rocheville claims that Caprigno violated his right to privacy when his former girlfriend, Michelle Stone, tracked his

cellphone and reported his whereabouts to Caprigno.  A right to
privacy, under the Fourth Amendment, "applies when the person
invoking its protection has a reasonable expectation of privacy
in the place to be searched or the item to be seized by
governmental officials." U.S. Dep't of Justice v. Jonas, 24
F.4th 718, 733 (1st Cir. 2022).  A protected expectation of
privacy requires both that the party asserting the right "has
exhibited an actual, subjective, expectation of privacy" and
that the "subjective expectation is one that society is prepared
to recognize as objectively reasonable." Id. at 734.
Rocheville has made neither showing.

Stone, not Caprigno, tracked Rocheville by using the "find
my iPhone" application.  Although Rocheville objects to Stone's
cooperation with Caprigno, he has not shown that Stone was a
state actor.  Rocheville cancelled the application when he
discovered that Stone was using it to track him.  Those
circumstances do not show a violation of Rocheville's right to
privacy actionable under § 1983.

To the extent Rocheville alleged that his right to free
movement was violated when unidentified police officers blocked
his car while parked at the police station, he agreed during the
hearing that none of the named defendants were involved in that
matter.  He also conceded that he does not know whose cars

blocked him.  Therefore, the defendants are entitled to summary judgment on the privacy and free movement claims in Count I.

### 3.  Relationship with His Sons

Rocheville alleged that Caprigno interfered with his relationship with his sons in violation of the Fourteenth Amendment.[7]  Encompassed within the Fourteenth Amendment's substantive due process right is "the fundamental right of parents to make decisions concerning the care, custody, and control of their children." Troxel v. Granville, 530 U.S. 57, 66 (2000).  Rocheville states that Caprigno violated his right to have a relationship with his sons, but he provides no developed argument to support that part of his objection to summary judgment on Count I.[8]  The claim was not alleged in the complaint and is not developed in the objection to summary judgment.  United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner,

---

[7] During the hearing, counsel stated that he was not pursuing that claim for purposes of summary judgment but suggested he might renew the claim.  Therefore, it is addressed here.

[8] During the hearing, counsel on Rocheville's behalf represented that Caprigno reported the conditions of Rocheville's home to the Department of Children, Youth, and Families, which caused Rocheville to lose his parental rights. Counsel later acknowledged that no evidence existed to support that representation.

unaccompanied by some effort at developed argumentation, are deemed waived.")  Therefore, Caprigno is entitled so summary judgment on Count I to the extent Rocheville alleged a violation of his right to have a relationship with his sons.


### 4.  Excessive Force

An issue arose during the hearing as to whether excessive force was used during the search of Rocheville's home.[9]  "The operative question in excessive force cases is 'whether the totality of the circumstances justified[s] a particular sort of search or seizure.'"  County of Los Angeles v. Mendez, 137 S. Ct. 1539, 1546 (2017) (quoting Tennessee v. Garner, 471 U.S. 1, 8-9 (1985)).  The reasonableness of the use of force in a particular incident is evaluated "for objective reasonableness based upon the information the officers had when the conduct occurred."  Id. at 1546-47.

In this case, the search of Rocheville's home was conducted pursuant to a search warrant issued by a New Hampshire Circuit Court judge.  The warrant was based on the application provided by Caprigno, supported by her six-page affidavit, which

---

[9] As is noted above in the context of substantive due process, to the extent Rocheville may have intended to claim that Keenliside's chest bump was a use of excessive force, that claim fails because Keenliside is not a defendant for purposes of Count I.

described the dogs, their care, and the condition of the house. The judge found probable cause to support the issuance of the search warrant, and Rocheville does not provide any plausible argument, much less evidence, that probable cause was lacking.

The search warrant was executed by "numerous" Pelham police officers, including Caprigno, along with animal control officers from other towns.[10]   Rocheville was not home at the time of the search.  His door was forced open, which resulted in damage to the door.

Rocheville contends that the number of officers and their military-style weapons demonstrates excessive force.  That information was based on a report by his neighbor.  Rocheville did not see the guns or the officers and was not intimidated or otherwise affected by the circumstances of the search.  He also contends that the forced entry was excessive because the door was unlocked.

Based on the information known to Caprigno, there were many dogs in the house, including pit bulls, which provides justification for the number of officers and for guns.  Further, Rocheville provides no evidence that Caprigno forced the door or

---

[10] Caprigno states that "numerous" officers participated. Rocheville contends that six officers, in addition to Caprigno, and two additional officers from another unit that participated in the search.

carried a weapon, and she is the only participating officer who is a defendant.

Under the circumstances, the defendants are entitled to summary judgment as to the excessive force claims in Count I.

### 5.   Arrest in Violation of the Fourth Amendment

As is noted above, Rocheville's Fourth Amendment claim was first raised in his opposition to the defendants' motion for summary judgment.  Generally, a party cannot assert a new theory, that was not pleaded in the complaint, in an effort to avoid summary judgment.  Miranda-Rivera v. Toledo-Davila, 813 F.3d 64, 76 (1st Cir. 2016).  Nevertheless, in this case, the defendants interpreted Count I to raise a Fourth Amendment claim and have responded to Rocheville's new claim in the reply.  The new claim was also discussed during the hearing.  The court will address the claim but only in the limited context in which it is raised.[11]

In his objection, Rocheville argues that his arrest violated his rights under the Fourth Amendment because the warrant was invalid and the defendants lacked probable cause to support the arrest.  He contends that Brenda Rizzo who signed

---

[11] In Count I, Rocheville alleges only claims based on the Fourteenth Amendment.  Rocheville is represented by counsel and is not entitled to the lenience that might be afforded to a pro se party.

the warrant in her capacity as a justice of the peace is not a
neutral and detached magistrate, as is required, because she is
an employee of the police department.  He contends that the
circumstances known at the time of his arrest did not provide
probable cause that he had committed the offense of animal
cruelty in violation of NH RSA 644:8, III.  The defendants do
not dispute that Rizzo is an employee of the police department
but argue, briefly, that her employment does not impair her
neutral and detached status.

The Fourth Amendment protects against unreasonable
seizures.  District of Columbia v. Wesby, 138 S. Ct. 577, 586
(2018).  Arrests are seizures.  Id.  To comply with the
reasonableness requirement, arrests must be based on probable
cause to believe that the suspect has committed a crime.
Karamanoglu v. Town of Yarmouth, 15 F.4th 82, 87 (1st Cir.
2021).  "The relevant inquiry is whether, on balance, the facts
known to the officer at the time of the arrest support probable
cause."  Karamanoglu, 15 F.4th at 88.

When a warrant is later determined to be invalid, the
constitutionality of the arrest depends on whether a warrantless
arrest was reasonable.  Graves v. Mahoning Cty., 821 F.3d 772,
776 (6th Cir. 2016).  "A warrantless arrest by a law enforcement
officer is a reasonable seizure under the Fourth Amendment
'where there is probable cause to believe that a criminal

offense has been or is being committed.'"[12] French v. Merrill,
15 F.4th 116, 124 (1st Cir. 2021).  "[P]robable cause exists
where 'police officers, relying on reasonably trustworthy facts
and circumstances, have information upon which a reasonably
prudent person would believe the suspect committed or was
committing a crime.'" United States v. Centeno-Gonzalez, 989
F.3d 36, 45 (1st Cir. 2021) (quoting United States v. Burhoe,
409 F.3d 5, 10 (1st Cir. 2005)).

        In this case, it appears to be undisputed that Rizzo was
the records clerk at the Pelham Police Department when she
signed the arrest warrant.  The Supreme Court has held that
"[w]hatever else neutrality and detachment might entail, it is
clear that they require severance and disengagement from
activities of law enforcement." Shadwick v. City of Tampa, 407
U.S. 345, 350 (1972).  It is reasonable to assume in this case
that Rizzo's employment at the police department entangled her
with law enforcement, which negated the necessary neutrality and
detachment for signing the arrest warrant.  For that reason, her

---

    [12] Rocheville does not suggest, much less provide evidence,
that the circumstances of his arrest implicate a right to
retreat into one's own home.  See Morse v. Cloutier, 869 F.3d
16, 30 (1st Cir. 2017).  The conditions in which the dogs and
puppies were being held in his home abundantly demonstrated an
urgent need to address their health and welfare.  Further, as
has been noted, none of the defendants participated in the
arrest, which was conducted by Sergeant Brian Barbato.

signature on the warrant does not provide a valid assessment of probable cause in support of the arrest.

Although not raised by the parties, Caprigno did not arrest Rocheville.  The officer who executed the arrest warrant, Brian Barbato, is not and has never been a defendant in this case. The false arrest claim appears to fail on that ground alone.

To the extent a claim of false arrest is brought against Caprigno, Rocheville's theory seems to be that she lacked probable cause to support her application for the arrest warrant.  The facts known to Caprigno, however, overwhelmingly supported probable cause for the arrest.

Rocheville was arrested on ten charges of cruelty to animals, misdemeanors, in violation of NH RSA 644:8.  Under the statute, "[a] person is guilty of a misdemeanor . . . who (a) without lawful authority negligently deprives or causes to be deprived any animal in his possession or custody necessary care, sustenance or shelter."  NH RSA 644:8, III(a).  As is summarized in the background section, Caprigno had reports from animal protection organizations that Rocheville was not caring for animals properly.  Rocheville's former girlfriend, Michelle Stone, reported that more than thirty dogs were in his home without proper care and provided photographs of the condition of the dogs and their surroundings, which showed neglect.  Caprigno visited Rocheville's home on several occasions and saw dogs that

24

were frail and in poor condition.  She assisted in removing some
of the dogs.  She also participated in executing the search
warrant and documented the conditions she found at that time,
which included urine and feces in the dogs' crates and on the
floor, dirty paper and blankets for their beds, a lack of food
and water available to the dogs, and their poor physical
condition.  Those reports and observations showed probable cause
to believe that Rocheville was not providing appropriate care
and sustenance to the dogs in his home.

Rocheville argues that the defendants should have
considered the condition of the dogs when they arrived at his
home and the efforts he made to treat their ailments.  He also
contends that some of the dogs were in good physical condition.
He argues that the defendants assumed that he had caused the
dogs' poor physical condition when, in fact, he was trying to
treat them.  He contends that the defendants should have had the
dogs examined by veterinarians to determine their condition.  He
also argues that his arrest is suspect because Stone was not
charged with animal cruelty although she also had lived in the
house with the dogs.

The conditions that Caprigno observed firsthand and in
photographs document the poor condition of the dogs and their
surroundings at Rocheville's home.  Whether or not the dogs
arrived at Rocheville's home in poor condition, the

circumstances in which he kept the dogs provided more than ample bases to conclude that he was not providing adequate care and sustenance for them.  Caprigno had also received complaints from entities that entrusted dogs to Rocheville's care that he was not providing proper care.  Therefore, Rocheville has not shown a material factual dispute to avoid summary judgment on his claim that his arrest violated his Fourth Amendment rights due to a lack of probable cause.

The defendants are entitled to summary judgment on all parts of Count I.  Because the claims are resolved on the merits, there is no need to address qualified immunity.

B.  <u>Remaining Claims</u>

Rocheville has withdrawn the other federal claim, alleging a conspiracy in violation of § 1985, Count II.  As a result, the federal claims, on which subject matter jurisdiction is based in this case, are dismissed on summary judgment.

Following withdrawal of claims during the hearing, the state law claims that remain in the case are:

Count III – State law civil conspiracy against Goulden and Caprigno.

Count V – Assault and battery against Keenliside.

Count VI – Malicious prosecution against Caprigno.

Count VII – Abuse of process against Caprigno.

Count VIII – Intentional infliction of emotional distress against Keenliside and Caprigno.

Count IX – Defamation against Caprigno.

Count X – Defamation per se against Caprigno.

Because federal question subject matter jurisdiction is now lacking, the court declines to exercise supplemental jurisdiction over the remaining state law claims.  28 U.S.C. § 1367(c)(3).


## Conclusion

For the foregoing reasons, the defendants' motion for summary judgment (document no. 28) is granted as to all claims in Counts I and II, and those claims are dismissed with prejudice.

The remainder of the case shall be remanded to Hillsborough County Superior Court, Southern District.

SO ORDERED.

_____
Andrea K. Johnstone
United States Magistrate Judge

March 21, 2022

cc:  Counsel of Record